FILED
2006 Sep-19  AM 08:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **GLADYS JENKINS, et al.,** ] | |
| ] | |
| **Plaintiffs,** ] | |
| ] | **CASE NO.:** |
| ] | **2:02-CV-1057-VEH** |
| **v.** ] | |
| ] | |
| **BELLSOUTH CORPORATION,** ] | |
| ] | |
| **Defendant.** ] | |

## MEMORANDUM OPINION

## I.      INTRODUCTION

Plaintiffs Gladys Jenkins, Denise Levert, David Williams, Peggy Johnson, and Sharon Griffin filed this lawsuit on April 29, 2002.  (Doc. #1).  The undersigned inherited this case by way of reassignment on July 2, 2004.  (Doc. #145).  Pending before the court are the following motions: (i) Plaintiffs' Motion for Leave to Amend (Doc. #232); (ii) Defendant's Motion to Strike Certain Class Allegations in Plaintiffs' Complaint (Doc. #156) (reinstated by margin order entered on February 16, 2005); (iii)   Defendant's Supplemental Motion to Strike Plaintiffs' Class Allegations Regarding Discrimination in Compensation (Doc. #202); and (iv) Plaintiffs'

Amended Motion for Class Certification (Doc. #223).[1]  The court has extensively studied all the filings relating to these pending motions and also held a hearing on them on June 1, 2006.  As discussed more fully below, the court concludes for a number of different reasons that this case is not suitable for class-wide treatment Accordingly, Plaintiffs' Amended Motion for Class Certification is due to be denied.

## II.    BURDEN ON CLASS CERTIFICATION

In *Cooper v. Southern, Co.*, 205 F.R.D. 596 (N.D. Ga. 2001), the court noted the Eleventh Circuit standard applicable to a party trying to establish entitlement to class certification:

> The burden of establishing the specific prerequisites to a Rule 23 action falls on those seeking certification. *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 456 (11th Cir.1996); *Gilchrist v. Bolger*, 733 F.2d 1551, 1556 (11th Cir.1984). The Court must be satisfied, after a "rigorous analysis," that the requirements of Rule 23(a) have been fulfilled. *Coon v. Georgia Pacific Corp.*, 829 F.2d 1563, 1566 (11th Cir. 1987).

*Id.* at 607-08.

---

[1]Also pending before the court is Defendant's Motion for Partial Summary Judgment Against Gladys Jenkins (Doc. #180), which the parties agree is ripe for a decision. (*See* Doc. #257; Doc. #259).  In a separate Memorandum Opinion entered on this date, the court granted Defendant's Motion for Partial Summary Judgment Against Gladys Jenkins.  By agreement of the parties, the court is holding the remaining pending partial summary judgment motions in abeyance, *i.e.*, Doc. #172; Doc. #174; Doc. #176; and Doc. #178.

## III.   ANALYSIS

### A.   Preliminary Certification Considerations

#### 1.   Requirement of Article III Standing and a Valid Substantive Cause of Action for Proposed Class Representatives

As the Eleventh Circuit has made clear, "analysis of class certification must begin with the issue of standing." *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987).   The question of whether an individual has standing to raise a claim is particularly important in the class action context because, before the court ever reaches the question of whether the individual's claims and the class claims will share common questions, it must decide whether the individual has a cognizable claim at all.   As the Eleventh Circuit has observed:

> [T]here must be an individual plaintiff with a cognizable claim, that is, an individual who has constitutional standing to raise the claim (or claims) and who has satisfied the procedural requirements of Title VII . . . Any analysis of class certification must begin with the issue of standing and the procedural requirements of Title VII.

*Id.* at 1482; *Wooden v. Bd. of Regents of the Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 n.20 (11th Cir. 2001) ("[T]he fact that this suit was brought as a class action does not alter [the proposed class representative's] obligation to show that he individually satisfies the constitutional requirements of standing.").   Because an issue of Article III standing "directly implicates federal subject matter jurisdiction," it must be

3

addressed as a threshold matter.  *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1272 (11th Cir. 2003); *Griffin*, 823 F.2d at 1476.  Accordingly, "it is well-settled that prior to certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise *each class subclaim*."  *Wooden,* 247 F.3d at 1287 (citing, among cases, *Prado-Steiman v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000) (same) and *Griffin*, 823 F.2d at 1482 (same) (emphasis added)).

In addition to satisfying Article III standing requirements, each named class representative must also himself assert a valid cause of action.  *See, e.g.*, *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (because the named plaintiffs' Title VII claims failed due to a lack of qualifications for the jobs at issue and their admissions that they were not discriminated against in denial of those jobs, they "were not proper class representatives"); *id.* at 406 n.2 (named plaintiffs were not adequate class representatives because it was clear prior to class certification that their individual claims should have been dismissed).  As the Eleventh Circuit observed in *Wooden*:

> [T]he district court is not required to resolve [plaintiff's] class certification request before resolving a challenge to [plaintiff's] individual claim.  If the district court were to resolve a summary

> judgment in Defendants' favor and in so doing dismiss [plaintiff's]
> individual claim before ruling on class certification, then [plaintiff]
> would not be an appropriate class representative.

*Wooden*, 247 F.3d at 1289.  Simply proving standing does not mean that the plaintiff "must, or should, prevail on the cause of action."  *Id*. at 1281.  "Standing" is a threshold determination that is "conceptually distinct from whether the plaintiff is entitled to prevail on the merits" of his individual claim.  *Id.* at 1280.

### 2.    Defining the Proposed Subclasses and Identifying Proposed Class Representatives

As argued in Plaintiffs' briefs and clarified during the hearing held on June 1, 2006, Plaintiffs have narrowed their class allegations to two proposed subclasses against BellSouth Telecommunications (referred to by the parties as "BST"), which is a subsidiary of Defendant BellSouth: "one consisting of African American hourly employees, the second consisting of African American entry-level salaried employees."  (Doc. #260 at 1).  Regarding the hourly employees (the "Hourly Subclass"), Plaintiffs seek certification on "BST's testing requirement that restricts promotion into entry-level management positions under both [(i)] disparate impact and [(ii)] systemic treatment theories."  (*Id.*).

The overall battery of employment-related tests is called "ACCESS to Management" and includes the Business Management Abilities Test ("BMAT"), the

Situational Judgment Inventory ("SJI"), and the Interpersonal Skills Assessment ("ISA").  According to Plaintiffs' Complaint, BST "stopped requiring employees to pass the ISA portion of the test, and in approximately Fall of 2000 waived the SJI portion of the test."  (Doc. #1 ¶ 25a.(i)).

Concerning the salaried employees (the "Salary Subclass"), Plaintiffs seek certification on "BST's method for setting salaries, alleging systemic disparate treatment in which African American employees are paid less than their white peers." (*Id.*).  The relevant time period sought by Plaintiffs is from April 29, 1998, to the present and includes all current and former employees within that period.  (Doc. #1 ¶ 28).  Plaintiffs rely upon both Title VII and 42 U.S.C. 1981 as legal bases to support their two proposed subclasses.

Defendant, on the other hand, has identified three purported subclasses against BST for the court to consider:

1.  Section 1981 racial disparate treatment compensation claim asserted on behalf of management employees or ("Managerial Compensation Subclass");

2.  Title VII racial disparate impact claim on SJI test asserted on behalf of non-management employees or (the "SJI Subclass"); and

3.  Title VII racial disparate impact claim on BMAT test asserted on behalf of non-management employees or (the "BMAT Subclass").

### a.    Plaintiffs' Proposed Salary Subclass

In pursuing a potential class for racial disparate treatment regarding compensation on behalf of management employees, Plaintiffs rely upon Plaintiff Denise Levert as the purported class representative.  Accordingly, if Levert (or any of her co-plaintiffs) lacks standing to assert a particular claim, or fails to assert a valid substantive claim on the merits, she or he is not a proper class representative under Rule 23 for that claim.

Turning briefly to Plaintiffs' original complaint, the court agrees with Defendant that the failure to include  adequate allegations about compensation relating to Plaintiff Levert is problematic because, as set forth above, the assertion of a valid cause of action is an essential piece of the adequacy evaluation.  Moreover, the court is not inclined, due to the lateness of the proposed amended complaint,[2] to grant Plaintiffs' Motion for Leave to Amend to the extent that it materially changes the substance of any claims.[3]  However, even if the court were to allow Plaintiffs' the

---

[2]On  November 22, 2002, the parties agreed to an amended pleadings deadline of March 17, 2003, for Plaintiffs.  (*See* Doc. #82 at 9 § IV.C.1.).  Plaintiffs filed their Motion for Leave to Amend over two (2) years after this stipulated cutoff date, three (3) years after initiating this lawsuit, and two (2) months after filing their Amended Motion for Class Certification.

[3]The court determines that Plaintiffs have not demonstrated  good cause for seeking leave to amend their substantive allegations as opposed by Defendant. Therefore, the court will enter an order denying Plaintiffs' Motion for Leave to

opportunity to amend their complaint to expressly assert a claim for discriminatory compensation on Ms. Levert's behalf (Doc. #232 at Ex. A ¶ 53; *id.* at Ex. B ¶ 53), the court still has fundamental concerns about her standing to make such a claim.

Standing is a snapshot of the justiciability of a plaintiff's claims at the time of filing. *Atlanta Gas Light Co. v. Aetna Casualty and Surety Co.*, 68 F.3d 409, 414 (11th Cir. 1995). Standing requires, at an "irreducible minimum," that the plaintiff has an "actual or threatened injury resulting from the defendant's conduct, that the injury fairly can be traced to the challenged action, and that the injury is likely to be redressed by favorable court disposition." *Atlanta Gas Light*, 68 F.3d at 414. Standing, therefore, emphasizes "whether the party invoking federal court jurisdiction has 'a personal stake in the outcome of the controversy,' and whether the dispute touches upon 'the legal relations of parties having adverse legal interests.'" *Flast v. Cohen*, 392 U.S. 83, 100-101 (1968) (internal citations omitted).

The record reflects a starting salary for Ms. Levert, as a network manager, of $52,600, which is equal to the level at which her suitable comparators were paid. Additionally, in terms of an increase, Ms. Levert received one at the rate of 3.4

---

Amend, but without prejudice to Plaintiffs' reseeking leave to amend to correct any grammatical problems, obvious house-keeping errors, or any other unchallenged modifications.

percent,[4] which equaled the highest increase for those similarly situated to her in Birmingham, and ranked second only to a 4.0 percent increase applicable to one employee in Tucker, Georgia. (Doc. #246 at 61 - 64). Moreover, Plaintiffs have not adequately countered this evidence with an alternative way to show an injury-in-fact to Ms. Levert in terms of setting her initial compensation. While Plaintiffs do try to argue that their "challenge is to disparities in the total salary BST paid to salaried employees," this statement is inconsistent with Plaintiffs' own definition of their proposed Salary Subclass, *i.e.*, which is aimed at challenging "BST's method for setting salaries."

Accordingly, this court does not see any basis in the current record to support the allegation that Plaintiff Levert, in terms of setting salaries, "was paid less than similarly situated white employees."[5] Furthermore, without any cognizable injury to her compensation or without any personal stake in the outcome of a compensation

---

[4]Four (4) other Birmingham employees also received a 3.4 percent increase.

[5]The court recognizes that the parties have agreed to hold the pending motion for summary judgment relating to Ms. Levert in abeyance; however, the viability of a plaintiff's personal ability to pursue a claim in which she seeks to represent a class is a relevant and necessary inquiry when considering certification. As the United States Supreme Court has explained, "the class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978) (quoting *Mercantile Nat. Bank v. Langdeau*, 371 U.S. 555, 558 (1963)).

claim tied to setting salaries, Plaintiff Levert lacks constitutional standing to pursue a compensation claim on behalf of the purported Salary Subclass as defined by Plaintiffs.  Accordingly, Ms. Levert is not an adequate representative for the Salary Subclass because (i) she does not assert a compensation claim in the Complaint; and (ii) even if the court considers the compensation allegations in Plaintiffs' proposed amended complaint, Ms. Levert lacks standing to validly assert them because the court is not persuaded, based upon the current record, that she has shown herself to have suffered an injury-in-fact.

### b.    Plaintiffs' Proposed Hourly Subclass

The proposed representatives for Plaintiffs' Hourly Subclass on testing discriminatory impact claims include Ms. Jenkins and Mr. Williams.[6]  With respect to Ms. Jenkins, the court in a separate Memorandum Opinion has determined that partial summary judgment in favor of BST on her Title VII claims is appropriate. Accordingly, Ms. Jenkins is not an adequate representative on any Hourly Subclass disparate impact claims.[7]

---

[6]As noted by Defendant, Ms. Jenkins is the proposed representative for the BMAT subclass and Mr. Williams is for the SJI Subclass.

[7]Any proposed class seeking to assert a discriminatory impact claim must do so under Title VII because § 1981 does not afford a litigant that particular type of relief.  *See Gen. Bldg. Contractors Ass'n v. Penn*, 458 U.S. 375, 388 (1982).

Similar to Ms. Jenkins, Mr. Williams also lacks standing as to each respective test under any Title VII discriminatory impact theory. More specifically, Mr. Williams has no standing because the record is devoid of any evidence showing that he ever took the BMAT (no constitutional injury-in-fact) or that he effectively challenged the SJI test (no standing under Title VII).[8] Accordingly, he also is an inadequate person to represent a class of persons seeking to challenge "BST's testing requirement that restricts promotion" on a discriminatory impact basis.

With respect to no standing under Title VII, while Mr. Williams did apparently take the SJI test,[9] he failed to exhaust his administrative remedies. Mr. Williams filed a charge with the EEOC on April 14, 2002, but requested its withdrawal prior to the EEOC's investigation. (Doc. #182 at Ex. H at Ex. 5; *id.* at Ex. 7). The EEOC sent a letter to Mr. Williams on June 7, 2002, which notified him that his prior charge had been withdrawn at his request. (Doc. #182 at Ex. H at Ex. 7). Accordingly, Mr. Williams never received a right-to-sue letter from the EEOC and, therefore, he has

---

[8]Therefore, similar to the court's analysis regarding Ms. Levert discussed below, Mr. Williams has no viable Title VII claims under either the allegations of the Complaint (BMAT) or the proposed amended pleading (SJI), which makes Plaintiffs' efforts to amend futile.

[9]While Mr. Williams's EEOC charge (Doc. 182 at Ex. H at Ex. 5 at 7) and Plaintiffs' Complaint (Doc. #1 ¶ 55) reference his taking the BMAT twice, the underlying documentation instead reflects that Mr. Williams took the SJI test. (Doc. 182 at Ex. H at Ex. 10).

no ability to pursue any Title VII claims, including any discriminatory impact ones
on behalf of the Hourly Subclass.

### 3.   Plaintiffs' Alternative Efforts to Seek Certification Under § 1981

#### a.   Plaintiffs' Proposed Salary Subclass

As discussed above, Ms. Levert is unable to represent Plaintiffs' proposed
Salary Subclass because (i) she does not state a compensation claim in her Complaint;
and (ii) even if she had (or even if the court were to allow the amended complaint to
be filed), based on the present record, Ms. Levert lacks standing to pursue such a
claim as she has not demonstrated injury-in-fact with respect to setting salaries.

Moreover, Plaintiffs have not identified an alternative party to serve in the
capacity of class representative for the Salary Subclass under § 1981.  Accordingly,
the court agrees with Defendant that Plaintiffs' proposed Salary Subclass is headless,
and as a result certification of it is alternatively not appropriate under § 1981.

#### b.   Plaintiffs' Proposed Hourly Subclass

Another aspect of Plaintiffs' Amended Motion for Class Certification seeks
certification of the Hourly Subclass on the basis of disparate treatment in violation
of § 1981.  Unlike Title VII, § 1981 does not have any administrative exhaustion
requirements.  Therefore, the failure of any proposed representative to file an EEOC

12

charge challenging BST's testing requirement for promotion is not detrimental to certification. However, several other problems exist which make class certification inappropriate under Rule 23.

### B.      Rule 23 Requirements[10]

Rule 23(a) contains four threshold requirements for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.[11] As outlined below, the court finds that Plaintiffs have not satisfied the last three threshold requirements of Rule 23(a) as it pertains to the Hourly Subclass.

### 1.      Commonality

Commonality requires that the grievances of Plaintiffs and the proposed class share a common question of law or of fact. Fed. R. Civ. P. 23(a)(2). The commonality element has been construed by one court as only requiring that there be one issue that affects all or a significant number of proposed class members.

---

[10]Because the court has already determined that certification of a Salary Subclass is inappropriate due to Ms. Levert's lack of standing and the absence of any other suitable alternative class representative identified by Plaintiffs, the court does not conduct any further analysis under Rule 23 as to that proposed subclass. Instead, the following discussion of Rule 23 threshold requirements is limited to the proposed certification of the Hourly Subclass pursuant to § 1981.

[11]Because standing of a proposed class representative is related to the area of adequacy of representation, the court has already discussed that aspect of the fourth threshold requirement of Rule 23(a) in its preliminary considerations.

*Anderson v. Garner*, 22 F. Supp. 2d 1379, 1385 (N.D. Ga. 1997) (a common question is defined as "one which arises from a 'nucleus of operative facts,' regardless of whether the underlying facts fluctuate over a class period and vary as to individual claimants.").

Plaintiffs' Amended Motion for Class Certification offers a systemic disparate treatment approach to certification with respect to the Hourly Subclass. (*See, e.g.*, Doc. #260 at 1). More specifically, Plaintiffs theorize that, because their statistics show an alleged discriminatory impact on African Americans (at least with respect to the BMAT), they have a statistical racial discrimination claim with the common link for the Hourly Subclass being BST's testing requirement.

However, before focusing on the issue of commonality, the court questions whether the legal machinery of § 1981 is appropriately used as Plaintiffs propose, *i.e.*, they seem to be seeking certification of a facially neutral testing requirement that would normally be pursued under a discriminatory impact theory by way of a statistical discriminatory treatment theory. In other words, in anticipation of a front door problem with using discriminatory impact under Title VII, Plaintiffs are trying to create a back door by means of § 1981.

The cases relied upon by Plaintiffs do not otherwise establish that this hybrid approach is consistent with any applicable law, whether binding on this court or

merely persuasive.  In particular, the cases referenced in Plaintiffs' briefs in support of class certification regarding testing all appear to have been brought under Title VII ones.[12]

Additionally, the court has found language from the Eleventh Circuit which it believes supports its assessment that Plaintiffs' blended disparate treatment based upon disparate impact evidence model is structurally deficient and unworkable:

> The plaintiff's task in establishing the requisite commonality or typicality is more difficult where, as here, disparate treatment is alleged. Disparate impact cases typically involve readily identified, objectively applied employment practices such as testing procedures.  The common reach of such practices is likely to be clearer and easier to establish than a general policy of race discrimination alleged to unite otherwise factually dissimilar disparate treatment claims.

*Nelson v. United States Steel Corp.*, 709 F.2d 675, 679 n.9 (11th Cir.1983) (citations omitted).  Therefore, at least in *Nelson*, the Eleventh Circuit recognized that a challenge to testing procedures is a typical disparate impact claim and not, as

---

[12]For example, one of the cases cited by Plaintiffs regarding testing is *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 159 (1982). *Falcon* included a claim for individual disparate treatment and adverse impact under Title VII. However, *Falcon* did not even involve employment-related testing.  Instead, the *Falcon* Court commented, *in dicta*, about the suitability of a challenged "biased testing procedure" for class action treatment without addressing under what theory of discrimination or under which appropriate statute such treatment would be suitable. Another case, *Connecticut v. Teal, 457 U.S. 440* (1982), is a Title VII testing requirement disparate impact lawsuit.  *Id.* at 442.

Plaintiffs propose, a (or part of a) disparate treatment claim.  Therefore, in the absence of controlling or persuasive precedent embracing Plaintiffs' suggested model, the court is unwilling to adopt Plaintiffs' model, and concludes that certification is inappropriate for this alternative reason.

However, even assuming that Plaintiffs' model is workable under § 1981, the court still finds insufficient commonality.  For example, and as identified by Defendant, there are at least six (6) potential subgroups that would need to be sorted with respect to an Hourly Subclass on BST's testing requirement:  (1) test passers that were promoted; (2) test passers that were not promoted; (3) test failures that were promoted; (4) test failures not promoted; (5) non-test takers not promoted; and (6) non-test takers promoted.  Even further subdivisions of these subgroups (*i.e.*, non-test takers who requested testing, but were denied, and were either promoted or not promoted versus non-test takers, who never requested testing, who were either promoted or not promoted) would be necessary to sort out issues of class members with standing and those without.[13]  Moreover, these subcategories would have varying degrees and types of proof depending upon, for example, whether members were denied access to testing by more than one supervisor or were permitted to test

---

[13]As framed by the current summary judgment papers, Plaintiff Peggy Johnson is a potential example of someone who failed to seek the testing opportunity, and thus may lack standing on an injury-in-fact basis.

and failed.  In sum, the court does not see a common thread suitable for certification

as Plaintiffs propose with their Hourly Subclass.

### 2.    Typicality

The typicality requirement is met when each class member's claims arise "from

the same event or pattern or practice and are based on the same legal theory" as the

claims of the  proposed class.  *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d

1332, 1337 (11th Cir. 1984).  Here, the typicality requirement is strained at best.[14]

As demonstrated by the various subdivisions within the potential Hourly Class,

Defendant's allegedly discriminatory practices adversely affected Plaintiffs and the

other  proposed  class  members  in  far  from  "the  same  general  fashion,"  making

Plaintiffs' claims atypical of the claims of the entire class.  *Kornberg*, 741 F.2d at

1337.  In particular, the court fails to see typicality between the harm allegedly caused

to  those  Plaintiffs  who  maintain  that  they  were  subjectively  excluded  from  the

opportunity of even taking tests by various supervisors at differing locations, and the

---

[14]As noted by many courts, the commonality and typicality requirements
involve similar considerations and "tend to merge."  *Falcon*, 457 U.S. at 158 n.13.
Both requirements "serve as guideposts for determining whether under the particular
circumstances maintenance of a class action is economical and whether the named
plaintiff's claim and the class claims are so interrelated that the interests of the Class
Members will be fairly and adequately protected in their absence."  *Id*.  Typicality is
thus  not  satisfied  here  for  substantially  the  same  reasons  that  the  commonality
requirement fails.

injury caused to any class members who were permitted to take tests, but failed them. In this court's view, these are two entirely distinct  challenges to Defendant's practices and policies.  *See Griffin*, 823 F.2d at 1493 ("The second requirement, however, was not satisfied.  Smith, a non-filing plaintiff, had an objective testing claim while Griffin, on the other hand, had subjective promotion and discipline claims.").

### 3.    Adequacy of Representation

The final Rule 23(a) certification prerequisite is adequacy of representation. To meet this requirement, Plaintiffs must show:  (1) that Plaintiffs' counsel is competent to handle the case; and (2) that there are no disabling conflicts of interest among the class members.  *Griffin v. Carlin*, 755 F.2d 1516, 1532-33 (11th Cir. 1985); *In re Consolidated "Non-Filing Insurance" Fee*, 195 F.R.D. 684, 691 (M.D. Ala. 2000).

The court's primary concern over this threshold requirement involves considerations of who among the named Plaintiffs could effectively represent the interests of the absent class members, given Plaintiffs' own potential justiciability and claim validity issues as well as the varying interests of the subgroups that comprise the Hourly Subclass.  In fact, after studying the class certification record, the court is not entirely clear that Plaintiffs are even able to make such a selection.

18

Accordingly, the court is left wondering if the Hourly Subclass has enough "heads" to adequately represent its potential members that have differing interests.

Additionally, the decision of Plaintiffs to forgo compensatory damages calls into question the adequacy requirement. Recognizing that the named Plaintiffs include some former employees of BST, the court still has concerns about the dividing effect that such a decision potentially has on the interests of former employee class members, regardless of any proposed structure the might allow former class members the opportunity to opt out.[15]

## IV. CONCLUSION

In sum and for the multiple reasons stated above, Plaintiffs have not met their burden on class certification. Accordingly, Plaintiffs' Amended Motion for Class Certification is due to be denied, and Defendant's motions seeking to strike Plaintiffs' class allegations are due to be mooted. Plaintiffs' Motion for Leave to Amend is also due to be denied. The court will enter an order consistent with this Memorandum Opinion.

---

[15]Because the court has otherwise (and alternatively) concluded that Plaintiffs fail to satisfy the threshold requirements under Rule 23(a) for certification of the Hourly Class pursuant to § 1981, it does not reach an assessment of any of the parties' arguments under Rule 23(b)(2) or (b)(3).

**DONE** and **ORDERED** this 19th day of September, 2006.

**VIRGINIA EMERSON HOPKINS**
United States District Judge