FILED

2006 Sep-20  AM 10:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **GLADYS JENKINS, et al.,** | ] | |
| | ] | |
| **Plaintiffs,** | ] | |
| | ] | **CASE NO.:** |
| | ] | **2:02-CV-1057-VEH** |
| **v.** | ] | |
| | ] | |
| **BELLSOUTH CORPORATION,** | ] | |
| | ] | |
| **Defendant.** | ] | |

## MEMORANDUM OPINION[1]

### I.    INTRODUCTION

Pending before the court is Defendant BellSouth Corporation's ("BellSouth")
Amended Motion for Partial Summary Judgment on Claims of Plaintiff Gladys
Jenkins (Doc. #180) filed on December 8, 2004.  The parties are in agreement that
this motion is ripe for a determination.  (*See* Doc. #257; Doc. #259).  As discussed
more fully below, the court finds that there are no material facts in dispute and that
Defendant is entitled to judgment as a matter of law.  Accordingly, Defendant's
Amended Motion for Partial Summary Judgment on Claims of Plaintiff Gladys
Jenkins is due to be granted.

---

[1]The court intended to file this Memorandum Opinion on September 19, 2006.

II.     **FACTS**[2]

    A.     **Plaintiff's Allegations**

Plaintiff Gladys Jenkins alleges in her Complaint that she was denied promotion to a Network Manager (or entry-level supervisory) position in "1999 or early 2000" and that, in May 2000, she was denied a promotion to a Trainer position, all on account of her race.  (Doc. #1 ¶¶ 34-35, 37).  In the Complaint, Ms. Jenkins also claims that she was denied the opportunity to take certain tests until after she filed her EEOC charge, and that "in August or September 2000," she took the Business Management Abilities Test ("BMAT") portion of the battery of tests know as "ACCESS to Management."[3]  (*Id*. ¶¶ 37, 39).

Ms. Jenkins is an African-American former employee of BellSouth Telecommunications, Inc. ("BST"), a subsidiary of BellSouth, who began her career with South Central Bell in 1969.  (Doc. #1 ¶ 32).  Ms. Jenkins seeks to represent a

---

[2]Whenever Plaintiff has adequately disputed a fact offered by BellSouth, the court has accepted Plaintiff's version.  These are the facts for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts.'") (citation omitted).

[3]The record on summary judgment reflects that the actual date of the BMAT examination that Plaintiff took occurred on September 27, 2000.  (Doc. #182 at Ex. E at Ex. 10).

class of current and former African-American employees concerning the alleged denial of access to testing and the alleged denial of promotions at BST. (Doc. #182 at Ex. E at 97).

### B.   EEOC Administrative Process

Ms. Jenkins filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 19, 2000. (Doc. #1 ¶ 38; Doc. #182 at Ex. E at Ex. 1). In her charge, Ms. Jenkins alleges (i) that she was denied a promotion to a pay grade 57 position in the "UNE" group in Birmingham, Alabama, on the basis of age, gender, and race; (ii) that she was not selected for a training position, and that she had been denied the opportunity to take certain tests. (Doc. #182 at Ex. 1).

The EEOC issued a notice of right to sue to Ms. Jenkins on September 26, 2000, indicating that "it is unlikely that additional investigation would result in a finding that the law was violated . . . ." (*Id.* at Ex. 3 at 1). Included with the notice of right to sue was a "Dismissal and Notice of Rights" (the "Notice") also dated September 26, 2000. (*Id.* at Ex. 3 at 3). Ms. Jenkins received her right to sue letter and Notice in September 2000. (*Id.* at 67). Ms. Jenkins did not take ACCESS to Management tests until after she had filed her charge and after the EEOC issued its letter and Notice to her. (*Id.* at Exs. 10-11). While Ms. Jenkins's charge does discuss

3

the denial of testing opportunities (*i.e.*, her exclusion from assessment), it does not make any assertions about the discriminatory impact of ACCESS to Management, BMAT or other employment-related testing at BST.  (*Id.* at Ex. 3).

Ms. Jenkins understood that according to the right to sue letter and Notice from the EEOC,  that she had ninety (90) days in which to file suit under Title VII based on her charge of discrimination.  (*Id.* at 70).  Although Ms. Jenkins contacted counsel within ninety (90) days of receiving the Notice from the EEOC  and considered filing a lawsuit during that window, she did not file her lawsuit until April 29, 2002.  (*Id.* at 70-71; Doc. #1).

On March 20, 2001, the EEOC issued a "Notice of Reconsideration" (the "Reconsideration") to Ms. Jenkins that attempted to revoke the "Notice" dated September 26, 2000.  (Doc. #182 at Ex. E at Ex. 4).  On September 20, 2002, the EEOC issued a "Notice of Right to Sue (Issued on Request)" ("Subsequent Notice") to Ms. Jenkins.  (Doc. #182 at Ex. L).  The Subsequent Notice indicated that Ms. Jenkins must file suit within ninety (90) days of her receipt of it.  (*Id.*).  By that time, Plaintiff already had a lawsuit pending in this court.  (Doc. #1).

On October 29, 2002, the EEOC issued a "Determination" to Ms. Jenkins, which indicated that "there is reasonable cause to believe the Respondent denied Charging Party the opportunity of being selected to take the assessment test and that

4

Respondent failed to promote her because of her race, Black and sex, female." (Doc.

#182 at Ex. E at Ex. 6). The Determination also summarized Ms. Jenkins's EEOC

charge as alleging "that she was discriminated against in violation of Title VII in that

she was denied the opportunity of being selected to take the assessment test and that

Respondent failed to promote her because of her race, Black, sex, female and because

of her age, 50 in violation of the Age Discrimination in Employment Act." (*Id.* at 1).

## II.    STANDARD

> In conducting [a summary judgment analysis], [the Court must] view all evidence and factual inferences in the light most favorable to the nonmoving party. *Id.* Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment. *Id.*

*Lofton v. Secretary of Dept. of Children and Family Services,* 358 F.3d 804, 809

(11th Cir. 2004).

## III.   ANALYSIS

### A.    Ms. Jenkins's Title VII Claims Are Time-Barred.

Title VII prohibits employers from engaging in "unlawful employment

practices" within the meaning of 42 U.S.C. § 2000e-2(a).[4]   Section 2000e-5(e)(1)

instructs that an administrative charge "shall" be filed with the Equal Employment

Opportunity Commission ("EEOC") "within one hundred and eighty days after the

alleged unlawful employment practice occurred."[5]   Failure to file within 180 days

bars a litigant's Title VII claims.  42 U.S.C. § 2000e-5(e)(1); *see also National R.R.*

*Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002); *Eastland v. Tennessee Valley*

*Auth.*, 714 F.2d 1066, 1067 (11th Cir. 1983).

Once the EEOC investigates and dismisses the charge, the claimant then must

file a judicial complaint within ninety days of receiving the notice of dismissal and

right to sue.  42 U.S.C. § 2000e-5(f)(1); *see also Santini v. Cleveland Clinic Florida*,

232 F.3d 823, 825 (11th Cir. 2000).   Absent the application of any equitable

considerations, the failure to satisfy any of these prerequisites bars a plaintiff's claim.

Ms. Jenkins filed a charge of discrimination with the EEOC on June 19, 2000,

alleging that BST intentionally discriminated against her in violation of Title VII by

---

[4]42 U.S.C. § 2000e-2(a) reads as follows:  "It shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race...."

[5]Alabama, where Jenkins's charge was filed, is a non-deferral state in which the charge filing period is 180 days, rather than the 300 day period in deferral states. *Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1220 (11th Cir. 2001), *cert. denied,* 534 U.S. 1127 (2002).

denying her promotions and the opportunity to take certain tests. (Doc. #182 at Ex. E at Ex. 1).  The EEOC investigated Ms. Jenkins's charge and, on September 26, 2000, issued a "no cause" determination and a Notice to her.  (*Id.* at Ex. 3).  The Notice issued to Ms. Jenkins reads as follows:

> This is your NOTICE OF RIGHT TO SUE, which terminates the Commission's processing of your charge.  If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in U.S. District Court.  If you decide to sue, you must sue WITHIN 90 DAYS from your receipt of this Notice; otherwise your right to sue is lost.

(*Id.* at Ex. 3 at 3).  Ms. Jenkins received the EEOC's Notice in September 2000, reviewed the document, and understood that she was required to file suit within 90 days (or by December 29, 2000) or she would lose the right to file suit.  (Doc. #237 at 7-8 ¶¶ 26, 29).  Nonetheless, she did not file a lawsuit until April, 2002.  (Doc. #1).

The requirement relating to the time for filing a Title VII action in district court is not jurisdictional, and therefore is subject to waiver, estoppel, and equitable tolling, like any other statute of limitations.  *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Ross v. U.S. Postal Service*, 814 F.2d 616, 617 (11th Cir.1987) (reversing district court for dismissing for lack of subject matter jurisdiction because of untimely filing and citing *Zipes* opinion); *Miller v. Marsh*, 766 F.2d 490, 493 (11th Cir.1985) (applying equitable tolling exception to untimely filing when plaintiff is

"'lulled' into pursuing other channels at the expense of her federal court remedy"); *Milam v. United States Postal Service*, 674 F.2d 860, 862 (11th Cir. 1982) (recognizing that application of *Zipes* decision means that prior conflicting precedent is no longer good law). However, Plaintiff has not pointed to any sufficient evidence in the record that would support the application of an equitable exception which would excuse the untimely filing of this case. For example, Ms. Jenkins has not demonstrated that her delay in filing a lawsuit was related to her confusion or being somehow misled by the EEOC. Instead, it is undisputed that Ms. Jenkins contacted legal counsel during the 90-day limitations period and considered filing a lawsuit against BST based on her charge. (*Id.* ¶ 30-31). As a result, the application of an equitable exception is not appropriate.

Moreover, the EEOC's later reconsideration of its September 26, 2000 Notice does not excuse Ms. Jenkins's untimely filing. On March 20, 2001, three months after Ms. Jenkins was required to file suit,[6] the EEOC issued a "Notice of Reconsideration" (the "Reconsideration"), which purports to revoke the September 26 notice of right to sue. (Doc. #182 at Ex. E at Ex. 4; Doc. #237 at 8 ¶ 32). Although the EEOC may

---

[6]Had the EEOC Subsequent Notice on reconsideration issued earlier, Plaintiff might have had a persuasive equitable estoppel argument relating to confusion caused by the EEOC. However, the record is devoid of any confusion caused by the EEOC during the 90-day time period in which Plaintiff was eligible to file suit.

reconsider its dismissal of a Title VII charge and revoke a right to sue notice, it is well-settled that the EEOC must do so within the 90-day period provided for in the right to sue notice.   29 C.F.R. § 1601.19(b) (procedure for "no cause" determinations); 29 C.F.R. §1601.21(b)(1) (procedure for "reasonable cause" determinations); *Gonzalez v. Firestone Tire & Rubber Co.*, 610 F.2d 241, 246 (5th Cir. 1980) ("The EEOC may issue a second ninety-day right-to-sue notice upon completion of a discretionary reconsideration of a prior determination provided it has given notice to both parties of its decision to reconsider within the ninety-day period provided by the initial notice of right-to-sue.").[7]

If the EEOC fails to do so within the 90-day period, its reconsideration will not validly revoke the notice of right to sue.   29 C.F.R. §1601.19(b) (2004) ("[T]he Commission will not issue a second notice of right to sue anew in situations where the original 90 day period in which to bring suit has expired prior to the notice of intent to reconsider.").   Accordingly, as the EEOC issued its Reconsideration well more than 90 days after issuance of the notice of right to sue, Plaintiff's lawsuit is still time-barred, despite the subsequent Determination issued by the EEOC. *Dougherty v. Barry*, 869 F.2d 605, 610-11 (D.C. Cir. 1989) (dismissing Title VII action as

_____

[7]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

untimely where plaintiff failed to file lawsuit within 90 days of original notice of right to sue, and EEOC had failed to revoke notice within 90 days) (relying on *Gonzalez*, 610 F.2d at 246, *Lute v. Singer Co.*, 678 F.2d 844, 846-47 (9th Cir. 1982), *modified on other grounds*, 696 F.2d 1266 (9th Cir. 1983), and *Trujillo v. Gen. Elec. Co.*, 621 F.2d 1084, 1087 (10th Cir. 1980)); *Martin v. KMart Corp.*, 1995 WL 137438, *1-2 (M.D. Fla. Mar. 27, 1995) (12(b)(6) dismissal of claim not filed within 90 days of notice of right to sue when EEOC did not revoke the notice within 90 days of its issuance); *see also Gitlitz v. Compagnie Nationale Air France*, 129 F.3d 554, 557 (11th Cir. 1997) (citing *Gonzalez* as controlling Eleventh Circuit precedent and dismissing claim not filed within 90 days of original notice of right to sue where EEOC did not reconsider prior determination).

## B.    Ms. Jenkins Is Not Able to Use the Piggyback Rule.

The court is not persuaded by Plaintiff's arguments regarding her ability to piggyback.[8]  The Eleventh Circuit has made it expressly clear that a person who files

---

[8]Piggybacking is also sometimes referred to as the single filing rule, *see, e.g, Gitlitz*, 129 F.3d at 557, and was developed out of a concern over the waste generated by "'numerous employees'" with the same grievances filing "'identical complaints with the EEOC.'"  *Wheeler v. American Home Prods. Corp.*, 582 F.2d 891, 897 (5th Cir. 1977) (citation omitted).  As explained by the Eleventh Circuit:

This rule encompasses two essential requirements: "First, at least one plaintiff must have timely filed an EEOC complaint that is not otherwise defective. . . .  Second, the individual claims of the filing and non-filing

a charge is bound by the scope of that administrative document:

> We agree with the reasoning of the Eighth Circuit and the Fifth Circuit.
> . . .  Where a plaintiff has filed an individual EEOC charge, such a
> plaintiff should be required to rely upon his or her own EEOC charge,
> and cannot reasonably rely upon the other claimant's charge.  Thus, we
> conclude that Collins may not "piggyback" onto Gitlitz's ADEA [or
> Title VII] claim.

*Gitlitz*, 129 F.3d at 558.

Plaintiff has not distinguished herself from the rule in *Gitlitz*.  Accordingly,

Ms. Jenkins is not able to piggyback onto an EEOC complaint filed by any of the

other named plaintiffs, regardless of the timeliness and otherwise administrative

validity of the other EEOC charges.

Moreover, even if *Gitlitz* did not prevent Ms. Jenkins from relying upon the

single filing rule, *Griffin v. Drugger*, 823 F.2d 1476 (11th Cir. 1987), would also

prohibit her from piggybacking onto Plaintiff Levert's charge due to the distinct

nature of the alleged discriminatory treatment involved, *i.e.*, the objective testing

claim of Ms. Jenkins (*i.e.* her failure of the BMAT on September 27, 2000) versus the

subjective promotion and discipline claims of Plaintiff Levert.  (Doc. #182 at Ex. G

at Ex. 1); *see Griffin*, 823 F.2d at 1493 ("The second requirement, however, was not

---

plaintiffs must have arisen out of similar discriminatory treatment in the
same time frame."

*Carter v. West Pub. Co.*, 225 F.3d 1258, 1263 (11th Cir. 2000).

satisfied.  Smith, a non-filing plaintiff, had an objective testing claim while Griffin, on the other hand, had subjective promotion and discipline claims.").

### C.   Ms. Jenkins's Information Provided to the EEOC After the Issuance of the Reconsideration Does Not Constitute a New Charge.

Plaintiff also argues, based upon *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314 (11th Cir. 2001), that the information that she provided to the EEOC after it sent her its untimely Reconsideration regarding her charge should constitute a new charge. In her affidavit, Plaintiff acknowledges that she contacted the EEOC upon receiving the Reconsideration in March 2001, and asserts that she would have filed a new charge if the EEOC had not led her to believe one was not necessary.  (Doc. #201 at Ex. 9 ¶¶ 5, 7).

For many reasons, the court is not inclined to extend *Wilkerson* to this case. First, in *Wilkerson*, the Eleventh Circuit found that an intake questionnaire submitted to the EEOC satisfied the requirements of an EEOC charge.  *Id.* at 1319.  The additional information provided by Ms. Jenkins to the EEOC was not in the form of an intake questionnaire, but rather in the form of a supplementation to her charge, and therefore *Wilkerson* is distinguishable.

Moreover, the intake questionnaire in *Wilkerson* was verified.  270 F.3d at 1319 ("In this case, we have a questionnaire that is verified and contains the

12

information suggested by 29 C.F.R. § 1601.12(a)."). While Ms. Jenkins has testified in her affidavit that she believes that she signed the final draft of her supplemental statement to the EEOC and that she understood that she was swearing to the truth of its contents (Doc. #201 at Ex. 9 ¶¶ 11, 13-14), no signature page or verification is contained in the record.  *See Edelman v. Lynchburg College*, 535 U.S. 106, 113 (2002).

Furthermore, even if the court were inclined to treat Ms. Jenkins's six (6)-page supplementation as a new charge, the timeliness of Ms. Jenkins's BMAT failure claim would be dubious at best.  The record reflects that Ms. Jenkins failed the BMAT on September 27, 2000, and that she would have first spoken with the EEOC after her receipt of its March 20, 2001 Reconsideration.  (Doc. #201 at Ex. 9 ¶ 5).  Depending upon when the March 2001 EEOC conversation took place, Plaintiff's BMAT claim may have already been extinguished by Title VII's 180-day rule.  Also, Ms. Jenkins states that she did not provide the EEOC with any written additional information, which included an entry about her failure of the BMAT, until mid-2001, which is well over 180 days from the alleged discriminatory act.

Finally, and as it relates to Plaintiff's BMAT claim in particular, the court fails to see how Plaintiff's statement that she failed the BMAT in September 2000, would "convince a reasonable person that [Jenkins] manifested her intent to activate the

machinery of Title VII" as it relates to a discriminatory impact claim. *See Wilkerson*, 270 F.3d at 1320.  Indeed, the Determination issued by the EEOC on October 29, 2002, reflects only an assessment of Plaintiff's denial of "the opportunity of being selected to take the assessment test" and offers no conclusions relating to the racially negative impact of the BMAT.  (Doc. #182 at Ex. E at Ex. 6 at 1).

### D.   Additionally, Ms. Jenkins's Discriminatory Impact Claims Are Barred Because They Are Beyond the Reasonable Scope of Her Charge.

Additionally, and regardless of whether Ms. Jenkins's Title VII claims were timely filed, her disparate impact discrimination claims based on ACCESS to Management, BMAT, or any other testing requirement are barred because they are beyond the reasonable scope of her charge.  Accordingly, Ms. Jenkins has failed to exhaust her administrative remedies as to any discriminatory impact claim.

To properly exhaust her administrative remedies, a claimant cannot raise any claims in the judicial complaint that she did not first assert in an EEOC charge. Accordingly, "[t]he starting point for determining the permissible scope of the judicial complaint is the EEOC charge and investigation." *Eastland*, 714 F.2d at 1067.  The permissible scope of a court complaint is governed by the scope of the administrative investigation that reasonably could be expected to grow out of the charge. *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 589 n.8 (11th Cir. 1994); *see also Evans v. U.S.*

14

*Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983) (reviewing administrative record and determining that plaintiff's "concept of widespread discrimination rooted in the subjective decisionmaking of the white supervisory staff" was outside scope of EEOC investigation and charge).

The analysis of whether one Title VII claim might reasonably have grown out of another most often occurs when a claim appears in the judicial complaint (here, disparate impact with regard to BST's testing requirements) that was not asserted in the EEOC charge. In determining whether the judicial complaint encompasses claims not asserted in an EEOC charge, courts look to whether there are "material differences" between the asserted and unasserted claims. *See Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989) (en banc). Courts also consider factors such as whether the EEOC's determination mentions the discriminatory act that is alleged in the lawsuit but not in the charge, or whether the charging party amended or supplemented her charge to add the previously unasserted claim. *See Williamson v. Int'l Paper Co.*, 85 F. Supp. 2d 1184, 1196-97 (S.D. Ala. 2000).

Here, Ms. Jenkins's EEOC charge makes no assertions about the disparate impact of ACCESS to Management, BMAT, or any other BST test on African-Americans in violation of Title VII. This omission is far from surprising because, when Plaintiff filed her charge in June 2000, she had not yet taken (and

failed) the BMAT.  Instead, Ms. Jenkins's charge complains about not being assessed (*i.e.*, tested).  More specifically, Plaintiff states in her charge that  "[d]uring March of 2000, [she] was denied an assessment (which is a test) which prevented [her] from being reassigned to a trainer's position that occurred during May of 2000."  (Doc. #182 at Ex. E at 1).

In fact, the focus of Ms. Jenkins's charge is on intentional discrimination—that is, discriminatory disparate treatment—by BST and does not contain the words "disparate impact" or similar language that would indicate the challenge of a facially neutral policy.  (*Id.*); *see also Butler v. Matsushita Comm. Indus. Corp.*, 203 F.R.D. 575, 582 (N.D. Ga. 2001) ("Butler's charge did not mention the words "disparate impact", nor did it refer to any facially neutral policy.").  Similarly, the right-to-sue letter issued to Ms. Jenkins on September 26, 2000, addresses the substance of Plaintiff's intentional discrimination claim and does not comment on discriminatory impact relating to testing.  (Doc. #182 at Ex. E at Ex. 3 at 2 ("[T]here is insufficient evidence to conclude that you were discriminated against, as alleged."));  *see also Butler*, 203 F.R.D. at 582 ("This language [from the EEOC] also refers to intentional discrimination, not a neutral policy.").[9]

_____

[9]Likewise, the subsequent Determination issued by the EEOC on October 29, 2002, is couched in terms of disparate treatment.  (Doc. #182 at Ex. E at Ex. 6 at 1 ("I have determined there is reasonable cause to believe the Respondent denied the

When a plaintiff relies on a charge of discrimination alleging only intentional discrimination to support her Title VII lawsuit, the plaintiff's "claim of disparate impact is not reasonably related to the charge or investigation" and therefore "exceeds the scope of the EEOC charge and [should be] dismissed." *Butler*, 203 F.R.D. at 582; *see also Murray v. John D. Archbold Mem. Hosp. Inc.*, 50 F. Supp. 2d 1368 (M.D. Ga. 1999) (determining that plaintiff's disparate impact claim was not "like or related" to intentional race discrimination alleged in EEOC charge). Moreover, neither the EEOC's initial written right-to-sue letter on Ms. Jenkins's charge nor the later, amended Determination reports any conclusions about the purported discriminatory impact of the BMAT or any other employment-related tests.[10] (Doc. #182 at Ex. E at Ex. 3; *id*. at Ex. 6).

Finally, the simple nature of the discrimination alleged in Ms. Jenkins's EEOC charge reasonably requires that her administrative complaint, and her lawsuit, be limited to claims of intentional discrimination. Ms. Jenkins's charge alleged that she and other African-American BST employees were being denied the opportunity to

Charging Party the opportunity of being selected to take the assessment test and that Respondent failed to promote her because of her race, Black and sex, female.")).

[10]The court notes that Plaintiff points to several EEOC documents that include disparate impact analysis; however, none of them relate to Plaintiff's specific charge. PES Ex. 24, Ex. 25, and Ex. 27 all pertain to Plaintiff Levert's charge.

take employment-related tests. Such a claim is fundamentally different from a claim that African-American employees have been allowed to take a test that had a negative disparate impact on them.[11]   When a plaintiff, like Ms. Jenkins, alleges that African-Americans were unable to obtain opportunities to take tests like BMAT, which is **not** a race-neutral policy, it would not be reasonable for the EEOC to investigate whether the denied tests had an adverse impact on a class of individuals who were, allegedly, not even able to take them.

In sum, the discriminatory impact claim advanced by Plaintiff is outside the parameters of both the charge and the actual investigation conducted by the EEOC. Further, her disparate impact-based claims materially differ from any of the disparate treatment claims in her EEOC charge. Thus, the EEOC investigation that reasonably could be expected to have grown out of that charge would not have examined disparate impact testing issues—especially when the charge and the Determination on reconsideration affirmatively state that, during the relevant time frame, Plaintiff

---

[11]The court also believes that this distinction takes Plaintiff's case out of the purview of *Griffin v. Carlin*, 755 F.2d 1516, 1522 (11th Cir. 1985), as the focus in *Carlin* was on the negative impact of employment-related testing requirements (a facially neutral policy), not the racially discriminatory exclusion from being tested (a non-neutral policy). *See id.* ("Several of these specifically indicated that they were ineligible for supervisory positions because they had failed the written examination.").

was not permitted to and did not take any employment-related tests[12]—and, in fact, did not examine these issues with respect to Plaintiff.  Accordingly, the court is persuaded that Plaintiff's discriminatory impact claim, whether based upon ACCESS to Management, BMAT, or any other alleged biased testing requirement of BST, is beyond "the permissible scope of the judicial complaint."

## IV.   CONCLUSION

As determined above, the court finds that there are no material facts in dispute and that Defendant is entitled to judgment as a matter of law.  Accordingly, Defendant's Amended Motion for Partial Summary Judgment on Claims of Plaintiff Gladys Jenkins is due to be granted, and all the Title VII claims of Plaintiff Jenkins are due to be dismissed with prejudice.  The court will enter an order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this 20th day of September, 2006.

_VIRGINIA EMERSON HOPKINS_

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[12]The one exception to this is Plaintiff's failure of the BMAT on September 27, 2000, which had occurred by the time the EEOC issued its Determination on reconsideration, but was not addressed at all in the contents of the Determination.